ARCHER *vs.* WILLIAMSON.—June, 1827.

Awards are certainly not treated as strictly now as they formerly were; they
are looked at with a more favourable eye, and more liberally construed;
they still, however, must possess the fundamental properties of an award.
Among other things, they are required to be within the submission—cer-
tain to a common intent, and final.

The rule in relation to the construction of awards is, that presumptions are
not to be raised for the purpose of overthrowing them; but that they are

to be liberally construed, so as to give effect and operation to the intention of the arbitrators where it can be done, and that every reasonable intendment is to be made in their support.

Arbitrators cannot reserve to themselves the authority to act judicially upon the subject submitted, after their powers are put an end to by making the award; neither can they delegate to another any part of their judicial authority, which is personal to themselves, nor refer to another, the decision of a point on which they find a difficulty to decide themselves, and much less to the parties to the submission, or either of them.

The reservation or delegation in an award of a power over the thing submitted, shows the award not to be final, and consequently void; unless indeed, it relates only to some merely ministerial act.

Where the subject referred was one undivided matter, specifically brought to the notice of the arbitrators, on which they professed to act, and the purpose of the parties was to have a final determination of the whole matter submitted, an award comprehending a part only of the matter submitted, was held to be void.

APPEAL from *Harford* County Court. This was an action of debt, brought by the appellee, (the plaintiff in the court below,) against the appellant, (the defendant in that court,) on articles of agreement dated the 28th of February 1822, for submitting certain matters to arbitration, &c. The defendant pleaded *nil debet*, with leave to each party to give the special matter in evidence. A case stated was agreed upon by the parties; and all errors in the pleadings were released. The court below gave judgment for the plaintiff, and the defendant appealed to this court.

The facts of the case sufficiently appear in the statement of the chief judge, who delivered the opinion of this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Mitchell* and *R. Johnson*, for the Appellant, contended, that the award made under the articles of agreement upon which the suit was brought, was uncertain, not final nor conformable to the submission, and impossible to be performed. They cited *Samon's* case, 5 *Coke*, 78. *Buspole's* case, 8 *Coke*, 98. *Kyd on Awards*, 176, 247. *Randall v Randall*, 7 *East*, 81, 1 *Bac. Ab.* tit. *Arbitrament & Award*, 218, 227. *Bussfield v Bussfield*, *Cro. Jac.* 577. *Jackson v De Long*, 9 *Johns. Rep.* 43. *Pedley v Goddard*, 7 *T. R.* 69, 73. 2 *Petersdorff*, 193. 2 *Chitty's Rep.* 594. *Blundell v Brettargh*, 17 *Ves.* 232.

242. *Gourlay v Duke of Somerset*, 19 *Ves.* 429. *Milnes v Gery*, 14 *Ves.* 400. *Coc:h v Jackson*, 6 *Ves.* 34. *Solomons v M'Kinstry*, 13 *John . Rep.* 27.

*Taney* and *Scott*, for the Appellee, cited 2 *Petersdorff*, 169, 170, 171, 178, 249. *Kyd on Awards* 129, 228, 229, 230, 231, 243, 202, 203, 204, 213, 214, 246, 244, 185, 186. *Caldwell on Arbitration*, 22, 25, 123, 126, 127, 107, 109, 492, 110, 115, 493. *Morgan v Mather*, 2 *Ves. jr.* 16. *Dick v Milligan*, *Ib.* 23. *Munro v Alaire*, 2 *Caine's Rep.* 320. *Dig. Amer. Decisions*, 18, 22, 25, 26. *Solomons v M'Kinstry*, 13 *Johns. Rep.* 27. *Thornton v Carson*, 7 *Cranch*, 596. 1 *Com. Dig. (New Ed.)* 668, 669, *(and notes.)* *Goldsmith vs Tilly*, 1 *Harr. & Johns.* 361. *Cromwell, et al. v Owings*, 6 *Harr. & Johns.* 10. *Richter v Chamberlin*, 6 *Binney*, 34. *Grier v Grier*, 1 *Dall*, 173. *Jackson v Yabsley*, 5 *Barn. & Ald.* 848. *M'Kinstry v Solomons*, 2 *Johns. Rep.* 57. *Jackson v Ambler*, 14 *Johns. Rep.* 96. *Simmonds v Swaine*, 1 *Taunt.* 549. *Pedley v Goddard*, 7 *T. R.* 73.

BUCHANAN, Ch. J. delivered the opinion of the court. The Appellant having contracted with the Appellee, for the purchase of several contiguous tracts of land—*Rough Stone, Maiden's Bower Secured, Paca's Industry, Rumsey's Neighbour*, and two called *Isaac's Delight*, containing together by estimation 711¾ acres, at $18 per acre, and the Appellee believing them to contain a greater number of acres, they on the 28th of February 1822, entered into a covenant, under seal, in the penalty of $5000, by which it was mutually agreed, that a resurvey of the lands should be made by two surveyors, one to be named by each of the parties, who should determine the actual contents of the lands, clear of elder surveys and adverse possessions, (with power to choose an umpire,) and whose decision should be conclusive and binding on the parties; a *rateable* addition or diminution in the amount of the purchase money to be made for any excess or deficiency that might be found in the quantity; on the condition, that unless the contemplated survey should be made and completed before the first of the following December, the parties should be bound and concluded by the estimate before made. On the 2d of March 1822,

the appellee executed a deed for the lands, to the appellant. On the 1st of June 1822, two surveyors were appointed in pursuance of the agreement of the 28th of February 1822. On the 29th of November 1822, another agreement was entered into between the parties for extending the time for closing the award to the 15th of December 1822, if it should be necessary. And on the 30th of November 1822, the two surveyors signed and sealed an instrument of writing, purporting to be an award, which was delivered to the respective parties within the time limited by the agreement of the 29th of November; and in which, after reciting the purpose for which they were appointed, they say, they "do determine the whole quantity of the said lands required to be measured, clear as aforesaid, to be seven hundred and fifty-one acres, provided no deduction shall necessarily occur in consequence either of the two tracts of land called *Rough Stone* and *Jonathan's Inheritance*, running into and interfering with each other; or of the resurvey called *Maiden's Bower Secured* not covering a part of the original survey called *Maiden's Bower*; that is, in the first instance, (as we have not before us the information requisite to determine those questions,) unless the said *David Williamson* shall obtain from the land-office, or otherwise, an authentic document, record or authority, by which it shall be clearly ascertained that the tract called *Rough Stone* is entitled to priority of date and effect, so as to prevail over, and take away from *Jonathan's Inheritance* the part thereof included within the lines of the former, it is our judgment, that a deduction of eleven acres and three quarters of an acre, shall be taken from the above recited quantity. Which document, record or authority, to be available, shall be obtained, and notice thereof given to the said *Stevenson Archer* on or before the first day of March next. And in the second instance it is our united judgment, that the said *Stevenson Archer* on his part, on or before the first day of March next as aforesaid, shall obtain and furnish the said *David Williamson* with an authentic document, of conclusive authority, whereby it shall be fully and clearly determined, that the conveyance heretofore by him made, for the land measured as aforesaid, is insufficient, void, and without the intended operation and effect in conveying any

part of the original tract called *Maiden's Bower,* which is not also covered by and included within the lines of the resurvey called *Maiden's Bower Secured,* if he shall continue determined to avail himself of any supposed advantage in this respect; and in case such conclusive evidence of such deficiency shall be furnished to the said *David Williamson* within the time herein before limited, and he on his part shall refuse or neglect, until after the first day of June next, to execute or procure a further deed or other assurance, whereby the defect so ascertained shall be remedied, or a remedy provided for the same, then and in these events, fifteen acres and one half acre shall in this respect be deducted from the quantity first determined, or from the residue in case the former deduction shall take effect as before mentioned; and otherwise not."

It is admitted that the appellee never obtained from the land-office, or otherwise, any such authentic document, record or authority, as is required by the award, in order to protect him from a deduction of eleven acres and three quarters of an acre from the 751 acres, by reason of the interference of the lines of *Rough Stone* and *Jonathan's Inheritance*; and that the appellant never obtained or furnished to the appellee any such document as is required by the award, to show that the deed of conveyance from the appellee to him was insufficient to convey any part of *Maiden's Bower,* which was not included within the lines of *Maiden's Bower Secured,* so as to entitle him to a deduction of the $15\frac{1}{2}$ acres mentioned in the award, on account of their not being included within the lines of *Maiden's Bower Secured,* and of the appellee's neglect to execute or procure a further deed or assurance:   According to the estimate at which the lands were originally sold by the appellee to the appellant, they contained $711\frac{3}{4}$ acres, $39\frac{1}{4}$ acres less than the arbitrators made out; which $39\frac{1}{4}$ acres were subject, on contingencies stated in the award, to deductions of $11\frac{3}{4}$, and $15\frac{1}{2}$ acres, making together $27\frac{1}{4}$ acres, leaving in the event of these deductions 12 acres more than the former estimate.   The suit was brought for the penalty in the agreement, and the nonpayment of the price of those 12 acres, and of the $15\frac{1}{2}$ acres, to a deduction of which the appellant did not, according to the award, show

himself to be entitled, making together 27½ acres, and amounting to $495, is assigned as the breach.

It is contended on the part of the appellant, that the award is bad; and on this the cause depends. Awards are certainly not treated as strictly now, as they formerly were; they are looked at with a more favourable eye, and more liberally construed; they still, however, must possess the fundamental properties of an award. Among other things, they are required to be within the submission, certain; that is, certain to a common intent, and final. The rule in relation to the construction of awards is, that presumptions are not to be raised for the purpose of overthrowing them; but that they are to be liberally construed, so as to give effect and operation to the intention of the arbitrators, where it can be done, and that every reasonable intendment is to be made in their support.

But has this award such characteristic features as entitle it to the favour of this court?

The only matter submitted was the ascertainment of the actual contents of the several tracts of land sold by the appellee to the appellant, clear of elder surveys and adverse possessions, which was to be conclusive and binding on the parties, provided it was done by the 15th of December then next following, but not otherwise. Was that done? is the question. If it was, by any fair and reasonable construction of the award, there is an end to this appeal.

The award was made and delivered within the time limited; and what do the arbitrators say? Why, that the lands they were required to survey contain together 751 acres, provided no deduction shall necessarily occur in consequence either of the two tracts of land called *Rough Stone* and *Jonathan's Inheritance*, running into and interfering with each other, or, of the resurvey called *Maiden's Bower Secured*, not covering a part of the original survey called *Maiden's Bower*; and that they had not before them the information requisite to determine those questions. So far then it is very clear that nothing is determined; and if the arbitrators had stopped there, they would have left the parties to the submission, just where they set out—perfectly ignorant of the actual contents of the lands clear of elder surveys and adverse possessions, and the award settling no-

thing, would have been manifestly void. But the arbitrators, after professing that they have not the means of determining the questions, proceed to say, that 11¾ acres shall be deducted from the 751 acres, unless the appellee shall obtain and give notice of it to the appellant, on or before the 1st of March 1823, (two months and an half after the time limited by the submission for the ascertainment of the quantity,) some document, not specified or particularly referred to, nor even known by the arbitrators to exist, by which it shall be clearly ascertained that *Rough Stone* has such priority as to take from *Jonathan's Inheritance* that part of the latter tract which lies within the lines of *Rough Stone.* And that 15½ acres shall be deducted, provided the appellant shall procure and furnish to the appellee some document, not designated or known to be in existence, whereby it shall be clearly determined that the deed from the appellee to the appellant is insufficient to pass any part of the tract of land called *Maiden's Bower*, which is not included within the lines of *Maiden's Bower Secured*, the land conveyed, unless the appellee shall, on or before the first of June 1823, execute or procure a further deed, to remedy the defect, so to be ascertained, but not otherwise. And time is also given to the appellant until the first of March 1823 to produce the paper by which the insufficiency of the deed from the appellee is to be ascertained. Now this is not like the case of an award, by which a certain sum, or a certain act, is directed to be paid or done at a subsequent day; there the sum to be paid, or the act to be done, is definitely ascertained, and no judicial act remains to be done by the arbitrators. Nor is it within the principle of the case referred to in *Kyd on Awards* 203, where the submission being in relation to a way leading to a house, it was awarded, that one should give a bond for £300 to the other, payable at the end of three years, and in case the way should be taken away, then that he should pay less by a certain sum; and if it should not, then that he should pay a certain sum more. There the exact sum to be paid, on the happening or not of the event, was ascertained and fixed, and the event on which the increased or diminished sum was to be paid, clearly and certainly designated, and nothing left to the will or caprice of either party in relation to the amount to be paid on the happen-

ing or not of the event; nor any thing left to be done by the arbitrators to give certainty to the award, in relation to the matter submitted and awarded; but all was certain on the face of it. Neither do we think it is like the case of *Thornton v Carson,* 7 *Cranch,* 596, much relied upon in argument, which was decided on the ground expressly taken by Judge *Washington,* who delivered the opinion of the court, that there was no uncertainty in the award.    But here the reduction of the quantity of land was made to depend not only upon the production or not (after the time limited for ascertaining the quantity,) of documents neither described nor particularly referred to, but which were supposed by the arbitrators to be necessary to a decision of the question, whether such reductions should be made or not, but also on the effect and operation of those documents, when produced, depending upon their construction; which was a judicial act that the arbitrators could not reserve to themselves the authority to exercise, after their powers were put an end to by making the award; neither can arbitrators delegate to another any part of their judicial authority which is personal to themselves, nor refer to him the decision of a point on which they find a difficulty to decide themselves; and much less to the parties to the submission, or either of them.

Here we find the arbitrators declaring that they have not before them the information necessary to a decision of the only matter submitted to them—the ascertainment of the actual contents of the lands—and therefore declining to determine that single point of difficulty between the parties, for the adjustment of which alone the reference was made, and deferring it to a future period, after the time fixed by the terms of the submission for making the ascertainment; and causing it to depend upon the effect and operations of documents to be procured and respectively furnished by the parties to each other.    Who was then to determine the effect and operation of those documents — the parties to the submission, or either of them, or the arbitrators? If the former, it was a void delegation of authority, and would be like the case of *Pedley v Goddard,* 7 *T. R.* 69, abridged in 2 *Petersdorff,* 174, where the arbitrators awarded that the defendant should pay to the plaintiff a certain sum of

money, unless within a certain time, (which would not expire until after the time allotted for making the award,) the defendant should exonerate himself by affidavit from certain specified p yments　Which was held not to be a final award, on the ground that the arbitrators, instead of determining themselves the points in dispute between the parties, had left one sum in dispute to be decided by the person, who, of all, was the least qualified to decide—the defendant himself.　And if the latter, it was a reservation of authority which the arbitrators could not make.　The very reservation or delegation of a power over the thing submitted, shows the award to be not final, and consequently void; unless, indeed, it relates only to some merely ministerial act, which is not the case here.　So far, then, as concerns the 11¾ acres, part of *Rough Stone*, which are also within the lines of *Jonathan's Inheritance*, and the 15½ acres part of *Maiden's Bower*, but not within the lines of *Maiden's Bower Secured*, the award is void, not being certain and final.　And as it respects the 15½ acres, there is another objection equally fatal; it is not, we think, within the submission.　The arbitrators could not have gone on the ground of any interference between the lines of *Maiden's Bower* and *Maiden's Bower Secured*, which would have applied as well to all the rest of the original tract, as to the 15½ acres.　But they seem to have supposed that the whole of the original tract was intended to be included in the sale of *Maiden's Bower Secured*, (the resurvey,) and to have made their award on that princip'e; whereas, the latter tract alone was the subject of the. contract, and no part of the original, not included by the lines of *Maiden's Bower Secured;* consequently no such part of the original constituted any part of the matter submitted.　And if the award could be held good as to that part, it would be to make a contract for the parties, and to make the appellant pay for land that he never purchased.　With respect to the 12 acres, not made subject to any future contingency, and of which separately, nothing is said in the award, it may be sufficient to remark, that there was a single and defined subject distinctly subm tted to the judgment of the arbitrators, "the actual contents of the lands sold clear of elder surveys and adverse possessions," on the condition, that if the contemplated ascertainment should not be made and completed within the time limited

by the submission for that purpose, the parties should be bound and concluded by a former estimate mentioned and referred to in the agreement. That time was the 15th of December 1822. The subject referred was one undivided matter, specifically brought to the notice of the arbitrators, and on which they professed to act. The purpose of the parties was to have a final determination of the whole matter comprehended within the submission, and not that it should be determined as to part, and left open and undetermined as to the residue; and that purpose is not obtained, if the award comprehends a part only of the matter submitted. On the 15th of December then, 1822, were the actual contents of the land sold "clear of elder surveys and adverse possessions," ascertained and determined? They certainly were not. By the aid of figures, to be sure, it may be ascertained that the arbitrators considered $723\frac{3}{4}$ acres as being clear of elder surveys and adverse possessions, making 12 acres more than the former estimate. But in relation to $27\frac{1}{4}$ acres they declined to make any decision, saying that they had not before them such information as enabled them to do so, and leaving that part of the matter submitted undetermined, and the parties, as to that, in the same state of uncertainty in which they were before the submission. The actual contents, therefore, of the lands, clear of elder surveys and adverse possessions, not being determined, the ascertainment of which, before the 15th of December 1822, was the very condition of the submission, the award cannot be considered good as to the 12 acres only, and void as to the residue, but is void as to the whole.

JUDGMENT REVERSED.